JOSEPH BUGUERO, Respondent, *v.* UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION, Appellant.

Second Department, December 10, 1926.

**Ships and shipping — action for injuries suffered by plaintiff while on board American vessel at dock in Southampton, England — plaintiff may recover under Merchant Marine Act of 1920, § 33, though accident was caused by negligence of fellow-servant — accident apparently was caused by unexpected movement of man in front of plaintiff at time when plaintiff was carrying linen upstairs — defendant and fellow-servant not negligent — plaintiff was guilty of contributory negligence.**

This is an action by a steward to recover for injuries suffered while on an American vessel, which, at the time of the accident, was at dock in Southampton, England. The plaintiff contends that the accident was caused by a bag of linen falling on him while he was on the top step of a stair. The plaintiff is entitled to recover under section 33 of the Merchant Marine Act of 1920, although the accident may have been caused by the negligence of a fellow-servant.

But the plaintiff cannot recover, since the evidence does not show any negligence by the defendant or the fellow-servant, for it appears that the plaintiff, one of 200 stewards, was carrying linen from the hold of the vessel to the deck; that he was the last man in line as he ascended the stairs to the deck; and that as he reached the last step a sudden and unexpected movement of the man in front of him, who came in contact with the plaintiff, caused the plaintiff to lose his balance and fall. The movement by the plaintiff's fellow-servant was one that he should have anticipated, and it seems that the plaintiff must have been too close behind the fellow-servant in going up the stairs so that the slight movement on the part of the fellow-servant, which was evidently caused by jostling or pushing by those ahead of him, precipitated the defendant to the floor below.

APPEAL by the defendant, United States Shipping Board Emergency Fleet Corporation, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 5th day of May, 1926, upon the verdict of a jury for $17,500.

*John C. Donovan [William A. DeGroot, United States Attorney, and Irving L. Evans,* with him on the brief], for the appellant.

*William S. Butler [James A. Gray* with him on the brief], for the respondent.

KAPPER, J. The plaintiff while in the employ of the defendant claims to have been injured on the steamship *Leviathan* (which was operated by the appellant) while the vessel was lying at its dock in Southampton, Eng., on September 11, 1925, and that his injury was due to the defendant's negligence. He was a steward, and his complaint says that " while the plaintiff was engaged in the discharge of his duties as such member of the crew of the said steamship and was upon the high seas as aforesaid, a basket of linen was caused and permitted to fall against and upon the plaintiff, whereby the plaintiff was bruised and wounded and seriously and permanently injured."

His evidence does not show that " a basket of linen was caused and permitted to fall against and upon " him, but that allegation will be overlooked in the light of the proof.

It may be taken for granted that plaintiff suffered a fall down the stairs or companionway of this steamship, and suffered an injury.

The plaintiff was his only witness to the happening of this accident. That would be no cause for criticism if the accident as detailed by him established the defendant's negligence. The plaintiff being a seaman, was entitled to the benefits of the provisions of the so-called Jones Act (Merchant Marine Act of 1920, § 33), and these would include liability for the negligence of a fellow-servant to whose alleged negligence alone does he attribute his injury. What the plaintiff claimed on the trial is within a very meagre compass. He testified that he was a steward, and had been following the sea about thirty years; that the *Leviathan* arrived at Southampton about five o'clock in the afternoon of September 11, 1925; and that the work which he and " over two hundred " of his fellow-stewards were engaged in at the time of his accident was the carrying of soiled linen from the hold of the ship to the saloon deck, requiring the mounting of two flights of stairs, from where this linen was to be taken off the ship. This linen was being conveyed by these stewards " in bags." The plaintiff says that he was " the last man on the line," and that as he went up the stairs he had his bag of linen on his left shoulder; that he got up from the linen room to the working alleyway, and then started up the stairway leading to the saloon deck. He then stated as follows: " I was the last man on the floor and the man

before me turning back hit me in the chest.   I was with heavy bag on my shoulder, near 200 lbs., I wasn't prepared, so I fell down, and to save my face and my head I put my arm up and it broke my wrist.   *   *   *   Q. Mr. Buguero, before we stopped I asked you to tell in your own words to the court and jury, after you had gotten to the top, next to the top step, what happened to you? A. Another man pushed me with a bag of clothes on the chest. Q. Then what happened to you?   A. I fell down.   Q. Where did you fall?   A. On the lower deck.   Q. How many steps was it that you fell, about?   A. Twelve."

This was substantially the entire direct evidence of the plaintiff. His cross-examination showed that the " other man " was ahead of him while he, plaintiff, was between the last step and the landing; that he had one foot on the top step and the other foot on the next to the last step, while the " other man " was not on the stair, that " he [the other man] was through."   Then this followed: " Q. He had already passed through, is that correct? A. Yes, he had already gone but when he was pushed he came back.   Q. What?   A. When he was pushed he came back.   Q. What part of the man struck you?   A. The bag that he had on his shoulder.   Q. And where did it strike you?   A. Between the breast and my head.   Q. Did you start up the stairs right after this man, or was it some time between the time that he started up and when you started up?   A. Yes, sir, right behind him.   Q. How far ahead of you was he when he started up the stairway?   A. Two or three steps.   Q. And when you were at the bottom step how far up the stairway was he?   A. Three or four inches from me was his bag.   Q. About how far ahead, when you were going up the stairway, when you were actually on the stairway, how far ahead was the man ahead of you?   A. One foot.   Q. Is that the way you walked up this stairway?   A. Yes, sir, one foot apart, when I got through the ladder then he was about one foot from me.   Q. I mean when you were walking up the stairway or the ladder, how many steps separated you from the man that was ahead of you from the top to the bottom of the stairway?   A. Two or three steps.   Q. So when you got close to the top of the stairway you started to go a little faster, is that correct?   A. No, the room was very well filled and they pushed and of course he came closer to me.   Q. Who was behind you on the stairway?   A. Nobody, I was the last."

This is all that I find in the record as to how this accident occurred and upon which the charge of the defendant's negligence is predicated.

There were a number of witnesses called by the defendant,

**556** Buguero *v.* U. S. Shipping Board Emergency Fleet Corp.

Second Department, December, 1926. [Vol. 218

Their testimony is rather of a negative character which, if accepted, might tend to cast doubt upon the happening of an accident to plaintiff on the ship, but in disposing of this appeal we consider this testimony as rejected by the jury.

At the close of the plaintiff's case defendant moved to dismiss " on the ground that the plaintiff has failed to prove facts sufficient to constitute a cause of action, either under the General Maritime Law or under the Act of June 5th, 1920," and an exception was taken to the court's denial of this motion. The motion was renewed at the close of the whole case, with like ruling and exception.

The point which the appellant urges is, that plaintiff failed to prove negligence. Citations from cases asserting abstract propositions of law are included in the appellant's brief. They are said to arise under the Federal Employers' Liability Act,* but they do not help us, as all they establish is that under the Jones Act (*supra*) negligence must be proven and that the mere happening of the accident will not warrant a recovery. This would seem to go without saying. Section 33 of the Jones Act† gives to seamen all the rights and benefits of the Federal Employers' Liability Act. That (latter) act provides that every common carrier by railroad while engaged in interstate commerce shall be liable to every employee while employed by such carrier in such commerce for such injury as resulted in whole or in part from the negligence of the carrier or its employees. It is well settled, and needs no citation of authority here, that the act abolished the common-law doctrine of non-liability for a fellow-servant's negligence. The consequence is that the master's liability is now the same to a servant for the negligence of a co-employee as it would be for such co-employee's negligence to a third person to whom the master owed a duty. But the liability of the master is for negligence and not merely because an accident occurred.

What we have here does not seem to me to involve actionable negligence, if the word " negligence " can at all be properly used in connection with this proof. Here was a line of 200 men going upstairs with bags of linen, the plaintiff being the last one in the line and proceeding onward until he came in propinquity with the man ahead of him. By some unexpected movement or shift of the body of the man ahead for reasons not at all disclosed, the plaintiff came in contact with the bag of linen on the shoulder of the man ahead. It caused him to lose his balance and to fall. True, he does say that the man ahead " was pushed " which brought

* 35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143,— [Rep.
† Approved June 5, 1920,— [Rep.

the man " back." Further, he states that the room where they were delivering the linen '' was very well filled and they pushed and of course he came closer to me." But there is nothing to show that this so-called pushing was other than the common every-day movement of a large group of men relieving themselves of their burdens. To my mind what happened was the commonest sort of incident that might well and, under the circumstances, should have been anticipated by the plaintiff if he got too close to the man ahead of him. If a line of men are going up a ladder of a building under construction carrying hods on their shoulders, the man behind must expect that the person ahead is not an inanimate object but that with the movement of his hips and arms there would naturally ensue some oscillation or variation or deviation from a strict line of travel that might be characterized as " grooved." There is undoubted merit in the appellant's contention that there was no negligence, and in its further claim that if there were negligence anywhere, it was the plaintiff's own negligence in going too close to the man ahead of him that brought about his mishap.

I advise that the judgment be reversed upon the law and the facts, with costs, and that the complaint be dismissed, with costs.

KELLY, P. J., JAYCOX, MANNING and LAZANSKY, JJ., concur.

Judgment reversed upon the law and the facts, with costs, and complaint dismissed, with costs.